1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                               **DISTRICT OF NEVADA**

8

9   ZANE FLOYD,                          )
                                         )
10              Petitioner,              )        2:06-CV-0471-PMP-CWH
                                         )
11  vs.                                  )
                                         )        **ORDER**
12  RENEE BAKER, *et al.*,               )
                                         )
13              Respondents.             )
                                         )
14  _____/

15          In this habeas corpus case under 28 U.S.C. § 2254, the respondents have filed a motion to

16  dismiss (ECF No. 77) the second amended petition for writ of habeas corpus (ECF Nos. 66/95) filed

17  by Zane Floyd, a Nevada prisoner sentenced to death.  As the basis for their motion, respondents

18  contend that several claims in the petition are barred by the doctrine of procedural default.  Having

19  considered the parties' arguments and relevant portions of the record, the court concludes as follows.

20          I   *Procedural History*

21          On September 5, 2000, after a jury trial in the District Court for Clark County, Nevada, Floyd

22  was convicted of four counts of first degree murder with use of a deadly weapon, four counts of

23  sexual assault with use of a deadly weapon, and single counts of burglary while in possession of a

24  firearm, attempted murder with use of a deadly weapon, and first degree kidnaping with use of a

25  deadly weapon.  The jury rendered a sentence of death for each count of murder.  Floyd appealed.

26          On March 13, 2002, the Nevada Supreme Court entered an opinion affirming the conviction

1   and sentences.  A petition for rehearing was denied on May 7, 2002, and a remittitur was entered on

2   March 26, 2003.

3        On June 19, 2003, Floyd filed a petition for post-conviction relief in the state district court

4   that he supplemented on October 6, 2004.  On February 25, 2005, the state district court entered its

5   order denying relief.  Floyd appealed.  On February 16, 2006, the Nevada Supreme Court affirmed

6   the lower court's decision.

7        On April 16, 2006, this court received Floyd's *pro se* petition for a writ of habeas corpus

8   pursuant to 28 U.S.C. § 2254.  On April 17, 2006, the court granted petitioner's motion for

9   appointment of counsel, and appointed the Federal Public Defender (FPD) as his counsel.  On

10  October 23, 2006, Floyd filed an amended petition.

11       On April 25, 2007, this court entered an order staying proceedings in this court in order to

12  provide Floyd the opportunity to exhaust state court remedies.  On June 8, 2007, Floyd filed a second

13  post-conviction petition in state district court.  On February 22, 2008, the state district court held an

14  evidentiary hearing on one narrow issue: whether post-conviction counsel in Floyd's prior state

15  proceeding was ineffective in failing to pursue relief based on Floyd's alleged organic brain damage.

16       April 23, 2009, the state district court entered an order denying relief.  Floyd appealed.  On

17  November 17, 2010, the Nevada Supreme Court affirmed the lower court's decision, noting that

18  many of the claims in Floyd's petition were barred by the law of the case doctrine and that his

19  remaining claims were barred because his petition was untimely and successive.

20       On March 16, 2011, petitioner filed a motion to lift the stay and reopen these proceedings.

21  On March 21, 2011, respondents filed their notice of non-opposition to petitioner's motion.  On June

22  13, 2011, Floyd filed a second amended petition, which is the subject of respondents' current motion

23  to dismiss.

24       II *Procedural Default*

25       A federal court will not review a claim for habeas corpus relief if the decision of the state

26  court denying the claim rested on a state law ground that is independent of the federal question and

2

1   adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court

2   in *Coleman* stated the effect of a procedural default as follows:

3             In all cases in which a state prisoner has defaulted his federal claims in
             state court pursuant to an independent and adequate state procedural

4             rule, federal habeas review of the claims is barred unless the prisoner
             can demonstrate cause for the default and actual prejudice as a result of

5             the alleged violation of federal law, or demonstrate that failure to
             consider the claims will result in a fundamental miscarriage of justice.

6

7   *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

8         A state procedural bar is "independent" if the state court explicitly invokes the procedural

9   rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).

10   A state court's decision is not "independent" if the application of a state's default rule depends on a

11   consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the

12   state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit

13   has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio*

14   *v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir.

15   2003).

16         A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established

17   at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96

18   F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). In *Bennett v.*

19   *Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test

20   for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading

21   "the existence of an independent and adequate state procedural ground as an affirmative defense."

22   *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the

23   petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the

24   state procedure, including citation to authority demonstrating inconsistent application of the rule."

25   *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of

26   the state bar rests with the State, which must demonstrate "that the state procedural rule has been

1    regularly and consistently applied in habeas actions." *Id.*

2         III *Discussion*

3         Respondents argue that claims that were unexhausted when Floyd returned to state court  in

4    2007 are now barred from federal review by the procedural default doctrine.   In affirming the lower

5    court's denial of Floyd's second state petition, the Nevada Supreme Court concluded that:

6         . . . many of the claims in Floyd's petition had been raised previously and further
          litigation of those claims was barred by the doctrine of the law of the case.  *See Hall*
7         *v. State*, 91 Nev. 314, 315-16, 535 P.2d 797, 798-99 (1975).  The remaining claims
          were barred because the petition was untimely and successive.  *See* NRS 34.726(1);
8         NRS 34.810(2).

9    ECF No. 78-7, p. 74.[1]   Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than

10   one year after the entry of the judgment of conviction or, if an appeal has been taken from the

11   judgment, within one year after the Nevada Supreme Court issues its remittitur.  Nev. Rev. Stat. §

12   34.810 addresses successive petitions and requires dismissal of claims that have already been raised

13   and adjudicated on the merits, as well as claims that could have been raised in an earlier proceeding,

14   but were not.

15        The Nevada Supreme Court analyzed and rejected the good cause arguments raised by Floyd

16   to overcome the procedural default of his claims.  *Id.*, p. 74-78.  The court also concluded that

17   Floyd's actual innocence claim was without merit.  *Id.*

18        Respondents meet their initial pleading burden under *Bennett* by asserting that the Nevada

19   Supreme Court's application of Nev. Rev. Stat. § 34.726 and § 34.810 to Floyd's second state post-

20   conviction petition constitutes an independent and adequate state procedural ground for denying

21   relief.  ECF No. 193, p. 29.  In response, Floyd challenges the adequacy of these rules on many

22   fronts.

23        With respect to Nev. Rev. Stat. § 34.810, Floyd points out that the Ninth Circuit ruled in

24   *Valerio v. Crawford*, 306 F.3d 742, 777-78 (9th Cir. 2002), that the successive petition bar is

25

26        [1]     Citations to page numbers for electronically filed documents are based on the ECF
     pagination.

1    inadequate to bar federal review.  As such, he has carried his burden under *Bennett;* and the burden

2    "shifts back to the government to demonstrate that the law has subsequently become adequate."

3    *King v. LaMarque*,  464 F.3d 963, 967 (9th Cir. 2006).

4            In an effort to make this showing, the respondents have provided a lengthy list of cases in

5    which the Nevada Supreme Court has purportedly applied the bar.  See ECF No. 110-1, p. 31-51.

6    However, only a smattering of the cases listed are capital cases, which, in this instance, are the only

7    cases relevant to the adequacy determination.  *See Valerio*, 306 F.3d at 776 (recognizing Nevada

8    Supreme Court's "commendable policy" in capital cases of exercising discretionary *sua sponte*

9    power to overlook the successive petition bar).  While the defaults in at least some of those cases

10   occurred before or near the time of Floyd's default, the Nevada Supreme Court did not actually apply

11   Nev. Rev. Stat. § 34.810 to bar the successive petition until several years later.  Consequently, the

12   respondents have not carried their burden of demonstrating the bar has become adequate post-

13   *Valerio*.

14           With respect to Nev. Rev. Stat. § 34.726, however, the Ninth Circuit has rejected the

15   argument that the Nevada Supreme Court of Nevada inconsistently applied the procedural bar for

16   time periods up to 1996.  *See Loveland v. Hatcher*, 231 F.3d 640, 642–63 (9th Cir. 2000) (as of

17   1993); *Moran v. McDaniel*, 80 F.3d 1261, 1269-70 (9th Cir. 1996) (as of 1996).  There have been no

18   Ninth Circuit decisions finding the bar inadequate as a general matter.  Floyd raises several

19   arguments, however, as to why the bar is inadequate to bar federal review in his case.

20           First, Floyd argues that the bar is inadequate due to the changes to the procedural landscape

21   brought about by *Crump v. Warden*, 113 Nev. 293, 934 P.2d 247 (1991).  In *Crump*, the Nevada

22   Supreme Court held that the mandatory appointment of post-conviction counsel required by Nev.

23   Rev. Stat. § 34.820(1)(a) carries with it the right to have that counsel provide effective assistance.

24   113 Nev. at 302-05, 934 P.2d at 252-54.  Floyd contends that, in his case, the Nevada Supreme Court

25   created a new rule as to the time limit for ineffective assistance of post-conviction claims.  He also

26   claims that the Nevada Supreme Court, in order to vindicate a petitioner's right to effective

1   assistance of post-conviction counsel, will ignore the timeliness and successive petition bars.

2       As to the purported new rule, Floyd points to the Nevada Supreme Court's determination that

3   his ineffective assistance of post-conviction counsel claims were untimely because they had been

4   raised more than one year after "the remittitur issued from the appeal of the denial of his *first*

5   *petition*."  ECF No. 78-7, p. 74-75 (emphasis added).  Be that as it may, the "rule" would only apply

6   to claims of ineffective assistance of post-conviction counsel.  As such, it does not otherwise impact

7   the adequacy of Nev. Rev. Stat. § 34.726 as a procedural bar.

8       With regard to the Nevada Supreme Court's alleged disregard of procedural rules in order to

9   protect a petitioner's rights under *Crump*, Floyd points to only three cases to support his position –

10  *Feazell v. State*, Nev. Sup. Ct. No. 37789, Order Affirming in Part and Vacating in Part (November

11  14, 2002), ECF No. 68-2, p. 1-11; *Middleton v. Warden*, 120 Nev. 664, 98 P.3d 694 (2004); and

12  *Rippo v. State*, 122 Nev. 1086, 146 P.3d 279 (2006).

13      Of these cases, only the opinion in *Feazell* references at least one of the procedural bars at

14  issue (i.e., Nev. Rev. Stat. 34.810(1)(b)). ECF No. 68-2, p. 6.  Even assuming it serves an example of

15  the inconsistent application of the rule, the case shows, at most, that the Nevada Supreme Court, in

16  some instances, may exercise its discretion to bypass an applicable procedural bar to reach an issue

17  with obvious merit.  Likewise, in *Middleton*, the Nevada Supreme Court merely gave the petitioner

18  another opportunity to litigate his post-conviction petition with a new attorney after finding that his

19  existing attorney had "repeatedly violated this court's orders and procedural deadlines"and submitted

20  work product that was "wholly substandard and unacceptable."  120 Nev. at 667-69, 98 P.3d at 696-

21  98.  The court's exercise of discretion in these isolated cases does not necessarily render the rule

22  inadequate to support a state decision in other cases.  *See Walker v. Martin*, 131 S.Ct. 1120, 1130

23  (2011) (explaining that a rule is not automatically inadequate "upon a showing of seeming

24  inconsistencies" and that state court must be allowed discretion "to avoid the harsh results that

25

26

1    sometimes attend consistent application of an unyielding rule").[2]

2        In *Rippo*, the court addressed whether a certain penalty phase jury instruction regarding the

3    consideration of mitigating circumstances was improper. 146 P.3d at 285. Floyd notes that the

4    Nevada Supreme Court raised the issue *sua sponte* long after the time limit imposed by Nev. Rev.

5    Stat. § 34.726 had expired.

6        Placed in context, however, the state supreme court's consideration of the issue has little, if

7    any, bearing on whether the applicable procedural bars are consistently applied.   The state petition

8    for writ of habeas corpus that gave rise to the appeal in *Rippo* was, in fact, filed in a timely manner.

9    *Id*. at 282.  The state district court had already denied Rippo's petition when the Nevada Supreme

10   Court announced a new rule in *McConnell v. State*, 102 P.3d 606 (Nev. 2004).[3]  The Nevada

11   Supreme Court found good cause for Rippo raising a *McConnell*-based claim on appeal, as opposed

12   to returning to the lower court, because the legal basis for the claim "was not available at the time he

13   pursued his habeas petition in the district court" and because the claim "present[ed] questions of law

14   that [did] not require factual determinations outside the record." *Rippo*, 146 F.3d. at 283 (internal

15   citations omitted).

16       The suggestion that the Nevada Supreme Court disregarded Nev. Rev. Stat. § 34.726 in

17   raising the jury instruction issue *sua sponte* after the one-year time limit is misleading because the

18   issue was ancillary to the court's adjudication of Rippo's *McConnell* claim. The court addressed the

19   issue, not as a freestanding ground for relief, but because of the issue's potential impact on the

20   court's harmless error analysis.  *See id*. at 285, 287-88.  Thus, rather than arbitrarily overlook

21   statutory default rules, the Nevada Supreme Court merely considered the impact of the defective the

22   jury instruction in the process of ruling upon a habeas claim (i.e., Rippo's *McConnell* claim) that had

---

24   [2]    For the same reason, the court is not persuaded that the Nevada Supreme Court's
25   application of its procedural rules violates the federal equal protection and due process clauses, as Floyd
     argues in his opposition.  See ECF No. 89, p. 33.

26   [3]    In *McConnell*, the Nevada Supreme Court ruled that it is "impermissible under the United
     States and Nevada Constitutions to base an aggravating circumstance in a capital prosecution on the
     felony upon which a felony murder is predicated." *McConnell*, 102 P.3d at 624.

1   been raised in a manner consistent with Nevada law.

2       Next, Floyd argues that Nev. Rev. Stat. § 34.726 does not apply in his case because he can

3   meet the statute's "good cause" exception to the rule or, alternatively, the good cause exception is

4   not clear, consistently applied, and well-established.  Nev. Rev. Stat. § 34.726 provides that good

5   cause sufficient to excuse the default exists if the petitioner demonstrates that the delay is not his

6   fault.  According to Floyd, the Nevada Supreme Court has suggested that a subjective standard is to

7   be applied and that counsel's failure to act is not the petitioner's "fault" in this context.  He cites,

8   however, only two cases to support this argument – *Bennett v. State*, 111 Nev. 1099, 901 P.2d 676

9   (1995) and *Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001).  The footnote in *Pellegrini* that

10  Floyd relies upon is dicta and elsewhere in the decision the court clarified that, to show good cause

11  under § 34.726,  a petitioner "must demonstrate that an impediment external to the defense prevented

12  him from raising his claims earlier."  34 P.3d at 526 n. 10, 537.  The Nevada Supreme Court has

13  consistently applied that standard for good cause.  *See State v. Powell*, 122 Nev. 751, 756, 138 P.3d

14  453, 456 (2006); *Sullivan v. State*, 120 Nev. 537, 542, 96 P.3d 761, 765 (2004); *Hathaway v. State*,

15  119 Nev. 248, 252, 71 P.3d 503, 506 (2003).

16      Floyd also argues that Nev. Rev. Stat. §34.726 cannot bar federal review because it is

17  inconsistently applied according to the Nevada Supreme Court's "unfettered discretion."[4]  To

18  support this argument, he recounts the procedural history of a series of cases in which the state

19  supreme court appears to have disregarded the procedural bar when it arguably applied.

20      In a recent decision, the Supreme Court held that a state procedural rule can adequately bar

21  federal habeas review even if the state court exercises its discretion at times to disregard the rule and

22  decide a habeas claim on its merits.  *See Walker*, 131 S.Ct. at 1129-30.  In so holding, the Court

23  observed that "[d]iscretion enables a court to home in on case-specific considerations and to avoid

24

25      _____

        [4]      Floyd also contends that cases showing that the Nevada Supreme Court disregards other
26  procedural bars are relevant in determining whether Nev. Rev. Stat. § 34.726 is an adequate bar.  This
        argument was squarely rejected by the Ninth Circuit in *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir.
        1996).

8

1    the harsh results that sometimes attend consistent application of an unyielding rule." *Id.* at 1130.

2         Floyd contends that *Walker* does not apply here because the California procedural rules at

3    issue in that case are clearly defined in a "trilogy" of state court cases – i.e., *In re Clark*, 855 P.2d

4    729 (Cal. 1993); *In re Robbins*, 959 P.2d 311 (Cal. 1998); and *In re Gallego*, 141, 959 P.2d 290

5    (Cal. 1998).  However, the Supreme Court focused on that trilogy of cases because California, unlike

6    other states such as Nevada, does not set a determinate time limit for collateral relief applications.

7    *See Walker*, 131 S.Ct. at 1125.  Instead, California's timeliness rules are entirely a product of case

8    law.  *Id.* at 1124.  Accordingly, the Court had to rely on those cases to determine whether the rules

9    were adequate to bar federal relief even though the time limit was indeterminate and, therefore,

10   subject to the state court's discretion.  *Id.* at 1128-29.

11        Because Nev. Rev. Stat. § 34.726, by its own language, contains elements parallel to those

12   contained in the trilogy of California cases, those elements did not need to be established by case

13   law.  Suffice it to say that Ninth Circuit, in several cases, has concluded that the Nevada time bar is

14   firmly established and regularly followed by the Nevada courts without relying on state cases to

15   "define" the rule.  *See Collier v. Bayer*, 408 F.3d 1279, 1285 (9th Cir. 2005); *High v. Ignacio*, 408

16   F.3d 585, 590 (9th Cir. 2005); *Loveland*, 231 F.3d at 642–63; *Moran*, 80 F.3d at 1269-70.

17        In light of *Walker*, the sampling of cases that Floyd relies upon as evidence that the Nevada

18   Supreme Court inconsistently applies Nev. Rev. Stat. §34.726 does not undermine the adequacy of

19   the rule.  Even assuming, however, that Floyd has carried his modest burden under *Bennett*, the

20   respondents can show that the procedural rule was "clear, consistently applied, and well-established"

21   at the time of Floyd's default.

22        The scope of the state's "ultimate burden" depends on the nature and depth of the petitioner's

23   allegations of inadequacy.  *Bennett*, 322 F.3d at 584-85 (quoting *Hooks v. Ward*, 184 F.3d 1206,

24   1217 (10th Cir. 1999)).  The respondents have provided a list of over 900 Nevada Supreme Court

25   opinions (from 2004 forward) in which they claim the court imposed the rule.  ECF No. 110-1, p. 1-

26   32.  Although the list is composed of mostly non-capital cases, Nevada courts do not appear to

distinguish between capital and noncapital cases in applying Nev. Rev. Stat. § 34.726.  *Cf. Bennett v. Mueller*, 322 F.3d 573, 583-84 (9th Cir. 2003) (recognizing that "California's rules governing timeliness in capital cases differ from those governing noncapital cases")*; Valerio*, 306 F.3d at 778 (noting Nevada courts's willingness to consider merits of a claim not raised in an earlier proceeding when death sentence at issue).

Based on the foregoing, this court concludes that Nev. Rev. Stat. § 34.726 was a "clear, consistently applied, and well-established" procedural rule at the time of Floyd's default.

Next, Floyd argues that several claims are not procedurally defaulted because they were exhausted on the merits on direct appeal or in his first post-conviction proceeding.  He identifies the following claims as falling in this category:  Claims One(D)(1)(in part), One(D)(2) (in part), One(H), Four(B)(1), Four(B)(5), Five, Seven, Nine, Ten, Thirteen (in part) and Seventeen(A)(in part).[5]

In Claim One(D)(1), Floyd claims that he received ineffective assistance of counsel because his trial counsel failed to object to numerous instances of prosecutorial misconduct.  Respondents dispute that Floyd presented this claim to the Nevada Supreme Court, but only with respect to Floyd's allegation regarding counsel's failure to object to the prosecution's failure to preserve the blood sample taken from him on the day he was arrested.  Respondents point is well taken.  Thus, the claim is procedurally defaulted as to that particular allegation.

In Claim One(D)(2), Floyd claims that he received ineffective assistance of counsel because his trial counsel failed to object to improper jury instructions.  This claim was presented to the Nevada courts in Floyd's first post-conviction proceeding, but only with respect to counsel's failure to object to the anti-sympathy jury instruction and the malice instruction and to request a penalty phase instruction that correctly defined the use of character evidence.  Thus, the claim is not procedurally defaulted as to those particular allegations.

In Claim One(H), Floyd claims that he received ineffective assistance of appellate counsel.

---

[5]    Seventeen(A) is a supplemental claim filed with leave of the court on January 30, 2012 (ECF No. 95).

This claim has been superceded by Claim Seventeen(A) (ECF No. 95), which is addressed below.

In Claim Four(B)(1), Floyd claims that the trial court committed constitutional error when it ordered trial counsel to provide the prosecution with the reports and raw data of non-testifying defense mental health experts.  He presented this claim in his direct appeal to the Nevada Supreme Court  ECF No. 28-5, p. 12-18.  Thus, the claim is not procedurally defaulted.

In Claim Four(B)(5), Floyd claims that his constitutional rights were violated by the trial court's failure to sever the sexual assault charges from the murder charges.  He presented this claim in his direct appeal to the Nevada Supreme Court.  ECF No. 28-4, p. 25-30.  Thus, the claim is not procedurally defaulted.

In Claim Five, Floyd claims that his conviction and death sentence are in violation of his constitutional rights because of the trial court's failure to grant a change of venue and sequester the jury.  He presented this claim in his direct appeal to the Nevada Supreme Court. ECF No. 28-4, p. 30; ECF No. 28-4, p. 2 - 7.  Thus, the claim is not procedurally defaulted.

In Claim Seven, Mr. Floyd's claims that his conviction and death sentence are in violation of his constitutional rights because the scope of victim-impact testimony that was allowed at this trial. Respondents concede that, except to the extent it challenges Nevada law, this claim was presented to the Nevada Supreme Court in Floyd's first post-conviction proceeding.  ECF No. 77, p. 24-25.  The court agrees with Floyd, however, that the challenge based on Nevada law was presented as well. ECF No. 29-7, p. 22-24.  Thus, Claim Seven is not procedurally barred.

In Claim Nine, Floyd claims that his conviction and death sentence are in violation of his constitutional rights because of the trial court's failure to grant a motion to sever counts relating to events at his apartment from those relating to events at the Albertson's.  Respondents concede that this claim was presented to the Nevada Supreme Court on direct appeal. ECF No. 77, p. 25.  Thus, the claim is not procedurally barred.

In Claim Ten, Floyd claims that his conviction and death sentence are in violation of his constitutional rights due to the cumulative effect of various instances of prosecutorial misconduct.

11

1   Respondents concede that this claim was presented to the Nevada Supreme Court on direct appeal,

2   except for allegations that challenge the prosecutor's alleged misstatements of law.  ECF No. 77, p.

3   26.  Because the additional allegations do not "fundamentally alter the legal claim already considered

4   by the state courts," the claim was exhausted.  *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).

5   Thus, Claim Ten is not procedurally barred.

6         In Claim Thirteen, Floyd claims that he was deprived of his constitutional rights because all

7   the elements of capital eligibility were not submitted to the grand jury or to the court for a probable

8   cause determination.  Respondents concede that, to the extent that it is based on trail court error, the

9   claim was presented on direct appeal.  ECF No. 77, p. 28-9.  Respondents contend, however, that the

10  "adequate notice" aspect of the claim was not presented until Floyd's second state post-conviction

11  proceeding.  Respondents are incorrect in this regard.  See ECF No. 28-5, p. 11.  Claim Thirteen is

12  not procedurally barred.

13        In  Claim Seventeen(A), Floyd claims that he received ineffective assistance of appellate

14  counsel.  Specifically, he contends that appellate counsel was ineffective in failing to argue the

15  following claims in his federal petition:  Claim Four(A-D), Claim Six, Claim Seven, Claim Eleven,

16  Claim Ten, Claim Twelve(B), Claim Fourteen, Claim Fifteen, and Claim Sixteen.  Floyd did present

17  ineffective assistance of appellate counsel claims in his first state post-conviction proceeding, but

18  only with respect to counsel's failure to raise the arguments contained in Claims Six, Seven, and Ten

19  of his federal petition.  ECF No. 29-7, p. 17-37.  As such, the claim is procedurally defaulted to the

20  extent that it is based on counsel's failure to raised the remaining claims.

21        Floyd contends that Claims Eight, Eleven, Twelve(A), and Seventeen(B), are not

22  procedurally defaulted because they could not have been raised prior to the conclusion of his first

23  state post-conviction proceeding.

24        For Claim Eight, which is based on allegations that two jurors saw him in his jail jumpsuit

25  and handcuffs, Floyd argues that the legal basis for the claim was not available until the Supreme

26  Court decided *Deck v. Missouri*, 544 U.S. 622 (2005).  There is no merit to this argument.  While

1   *Deck* clarified the issue, the constitutional right of a defendant to appear free of shackles was not

2   novel at the time of Floyd's default.  *See*, *e.g*., *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir. 1989);

3   *Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985)).  Indeed, the court notes that Floyd cites,

4   in Claim Eight, to a pre-*Deck* decision – *Gonzalez v. Pliler*, 341 F.3d 897, 900 (9th Cir. 2003).  ECF

5   No. 66, p. 189-91.  Accordingly, Floyd has not shown cause for his failure to raise the claim in

6   compliance with Nevada's procedural rules.  *See Stewart v. LaGrand*, 526 U.S. 115, 119-20 (1999)

7   (holding that petitioner lacked cause for failing to raise claim that execution by lethal gas violated

8   Eighth Amendment because the issue had been widely debated for years and several states were

9   reconsidering use of that method of execution at the time of petitioner's default).

10   For Claim Eleven, wherein he alleges that Nevada's death sentence by means of lethal

11   injection violates the Eight Amendment, Floyd argues that the State's suppression of execution

12   protocols, the relatively recent publication of scientific evidence regarding pain caused by the lethal

13   injection process, and the absence of a state forum to litigate the claim provide cause sufficient to

14   excuse procedural default of the claim.  These arguments are without merit.

15   As noted above, constitutional challenges to execution by lethal injection are not a recent

16   development.  Even though Claim Eleven is partially premised on the allegedly suppressed protocols

17   and recently published information, that does not justify Floyd's failure to bring a lethal injection

18   claim prior to 2007.  *See Williams v. Stewart*, 441 F.3d 1030, 1060-61 (9th Cir. 2006) (per curiam)

19   (finding lethal injection claim procedurally defaulted where Arizona prisoner failed to seek evidence

20   after introduction of lethal injection as mode of execution in 1992 but before filing a post-conviction

21   petition in 1994).  Likewise, Floyd's argument that constitutional challenges to lethal injection are

22   not cognizable in state court does not excuse him from failing to raise the claim earlier.  *See Roberts*

23   *v. Arave*, 847 F.2d 528, 530 (9th Cir. 1988) ("[T]he apparent futility of presenting claims to state

24   courts does not constitute cause for procedural default.").

25   For Claim Twelve(A), wherein he claims that the Nevada Supreme Court's review of his

26   sentence is unconstitutional, he claims that the state court does not provide a forum to litigate this

claim. Here again, the apparent futility of presenting a claim to state court does not excuse the failure to raise it. Moreover, Floyd *did* raise the claim in the state district court, but failed to raise it on appeal. ECF No. 29-4, p. 7-8; ECF No. 29-7.

In Claim Seventeen(B), Floyd claims that he was deprived of effective assistance of post-conviction counsel. The Supreme Court has explicitly left open the question of whether there is an exception to the constitutional rule that there is no right to counsel in collateral proceedings in cases where the initial-review collateral proceeding is the petitioner's first opportunity to raise an ineffective assistance of trial counsel claim. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). However, 28 U.S.C. § 2254(I) precludes Floyd from relying on the ineffectiveness of his post-conviction attorney as a ground for relief arising under section 2254. As such, the claim is dismissed on that basis.

Floyd argues that Claims One(D), Four(B), Five, Six(B), Six(D), Seven, Nine, Twelve, Thirteen, and Fourteen, are not procedurally defaulted because the Nevada Supreme Court implicitly adopted the state district court's ruling that these claims had previously been reached on the merits. Floyd points to the court's statement (in his second state post-conviction proceeding) that many of his claims were barred by the law of the case doctrine. ECF No. 89, p. 73.

Floyd did, in fact, raise several of these claims prior to his second state post-conviction proceedings and, for the reasons stated above, those claims are not procedurally defaulted. As to the remaining claims, however, this court is not convinced that they were fairly presented or considered by the Nevada Supreme Court on direct appeal or in Floyd's first post-conviction proceeding.

As an alternative reason as to why certain claims should not be determined to be procedurally defaulted, Floyd argues that the Claims One(B), One(C), Four(A), Six(A-C, E), Ten, Thirteen, Fourteen, and Fifteen, were exhausted on direct appeal via the Nevada Supreme Court's mandatory review under Nev. Rev. Stat. § 177.055(2), which requires the state supreme court to consider, among other things, "whether the sentence of death was imposed under the influence of passion, prejudice or any arbitrary factor." Nev. Rev. Stat. § 177.055(2)(d).

1    In order to find any claims exhausted by virtue of the Nevada Supreme Court's review under

2  Nev. Rev. Stat. § 177.055, this court must be satisfied that such review encompassed the specific

3  factual and a federal law grounds advanced by the petitioner in his federal petition.  *See Comer v.*

4  *Schriro*,  463 F.3d 934, 954-56 (9th Cir. 2006) (examining whether petitioner's federal habeas claims

5  were impliedly exhausted under the Arizona Supreme Court's independent review process).  In

6  allowing implied exhaustion in *Comer*, the court of appeals noted that, pursuant to Arizona's statutes

7  and case law, the Arizona Supreme Court "examines the entire record, particularly the sentencing

8  hearing, to determine if any procedural errors occurred or other arbitrary factors influenced the

9  sentencing court's decision to impose the death sentence," and that the court "is clearly conscious of

10 its duty to respect the dictates of the Eighth and Fourteenth Amendments and to ensure that the death

11 penalty is not imposed in an arbitrary and capricious fashion."  *Id.* at 955.  In addition, the court of

12 appeals held that only claims that are "clearly encompassed within Arizona's independent review"

13 and  "readily apparent from the record" will be deemed impliedly exhausted.  *Id.* at 956.

14    Here, neither the statute itself nor Nevada case law obligates the Nevada Supreme Court to

15 apply federal law standards in conducting its review under Nev. Rev. Stat. § 177.055.  *Sechrest v.*

16 *Ignacio*, 943 F.Supp. 1245, 1250 (D.Nev. 1996).  Moreover, Floyd has not shown that any of the

17 claims at issue are "clearly encompassed" within the scope of Nev. Rev. Stat. § 177.055 and "readily

18 apparent" in the record reviewed by the Nevada Supreme Court.  Thus, none of the claims were

19 exhausted on direct appeal by operation of the mandatory review statute.

20    Based on the foregoing, the court concludes that the following claims are procedurally

21 defaulted: Claims One(A-C, part of D, E-G), Two, Three, Four(except for (B)(1) and (5)), Six, Eight,

22 Eleven, Twelve, Fourteen, Fifteen, and Seventeen(A, in part).  As for Claim Sixteen, this court

23 agrees with Floyd that a cumulative error claim does not necessarily need to be exhausted in the

24 sense that this court is obligated to consider the cumulative impact of constitutional errors in the

25 state court proceeding that resulted in his conviction and sentence.  *See Killian v. Poole*, 282 F.3d

26 1204, 1211 (9th Cir. 2002) (stating that "even if no single error were prejudicial, where there are

1   several substantial errors, 'their cumulative effect may nevertheless be so prejudicial as to require

2   reversal.' ") (*quoting United States v. de Cruz*, 82 F.3d 856, 868 (9th Cir. 1996)).

3   Finally, Floyd argues that he should have the opportunity, after full development of the

4   factual record, to show cause and prejudice to overcome any procedural default.  This argument is

5   premised the Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).  In

6   *Martinez*, the Court held that, in collateral proceedings that provide the first occasion to raise a claim

7   of ineffective assistance at trial, ineffective assistance of post-conviction counsel in that proceeding

8   may establish cause for a prisoner's procedural default of such a claim.  *Martinez*, 132 S. Ct. at 1315.

9   The Court in *Martinez* stressed that its holding was a "narrow exception" to the rule in

10  *Coleman v. Thompson*, 501 U.S. 722 (1991), that "an attorney's ignorance or inadvertence in a

11  postconviction proceeding does not qualify as cause to excuse a procedural default."  *Martinez*, 132

12  S.Ct. at 1315.  It is clear from the opinion that the exception does not extend beyond ineffective

13  assistance of trial claims.  *See id.* at 1320.  Thus, in this case, *Martinez* would potentially apply to

14  only the procedurally defaulted sub-claims set forth under Claim One of Floyd's petition.

15  The Ninth Circuit has noted that, "*Martinez* made clear that a reviewing court must determine

16  whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*,[6]

17  whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether

18  there is prejudice."  *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (footnote added).  Under

19  *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient

20  and that the defense was actually prejudiced as a result of counsel's errors.  *Strickland*, 466 U.S. at

21  684.

22  There is a strong presumption that an attorney performed within the wide range of

23  professional competence, and the attorney's performance will be deemed to have been deficient only

24  if it fell below an objective standard of reasonableness measured under prevailing professional

25  norms.  *Id.* at 689, 694.  To prove prejudice, the petitioner must demonstrate that there is a

26  

---

[6]      *Strickland v. Washington*, 466 U.S. 668 (1984)

reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different.  *Id*. at 694.  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  *Strickland*, 466 U .S. at 689.  As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and citation omitted).

The application of the *Strickland* test in this instance means that Floyd is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for their errors, there is a reasonable probability that Floyd would have received relief on a claim of ineffective assistance of trial counsel in state court.  In opposing respondents' motion to dismiss, Floyd argues that he can make such a showing with respect to Claims One(A), (B), and (part of D).  ECF No. 104.  For the reasons that follow, he has not carried his *Martinez* burden with respect to those claims.

Claim One(A) is premised on allegations that trial counsel failed to adequately develop and present evidence that would have negated Floyd's intent to commit first degree murder and would have bolstered his case for mitigation.  In relation to this claim, Floyd contends that his initial post-conviction counsel, David Schieck, was ineffective in failing to develop evidence that Floyd suffered from organic brain damage caused by Fetal Alcohol Spectrum Disorder (FASD) and in failing to delve into Floyd's social history of child abuse and substance abuse.

With respect to the latter, trial counsel presented the testimony of Jorge Abreu.  ECF No. 112-5, p. 130-78.  In preparation for the hearing, Abreu, a social worker and psychoanalyst, had compiled a detailed social history of Floyd based on interviews with family members and other people who played a significant role in Floyd's life, as well as numerous documents such as school, employment, and military records.  In his testimony, he gave a chronology of Floyd's life.  That chronology included specific information regarding the substantial role alcohol and substance abuse

17

played in the life of Floyd and his family from prior to his birth until the day he committed the murders.  It also recounted instances of domestic violence either witnessed by or directed at Floyd, Floyd's developmental problems and difficulties in school, his rocky relationship with his often-absent adoptive father, his being rejected by his biological father, his stressful (and ultimately failed) military career, and his inability to hold a job after being discharged from the Marines.  To supplement or elaborate upon this information, trial counsel also presented the testimony of a close family friend of the Floyds, Floyd's baseball coach, his co-worker, his best friend while he was growing up, his closest friend in the Marines, his psychiatrist when he was a teenager, and his parents.

Although trial counsel presented extensive testimony about the adverse circumstances pervading Floyd's life, Floyd claims that post-conviction counsel was ineffective for not digging deeper into his social history to uncover evidence of more dramatic instances of abuse committed by Floyd's parents.  See ECF No. 104, p. 10-11.  This court is not convinced that post-conviction counsel was ineffective in this regard.  The additional evidence cited by Floyd would have provided only marginal mitigatory value to the case presented by trial counsel.  Moreover, it would have potentially undermined testimony from Floyd's parents that was presumably designed to elicit sympathy from the jury.  *See Strickland*, 466 U.S. at 689-90 (the habeas court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment").

As for the evidence regarding organic brain damage caused by FASD, Floyd's trial counsel sought the opinion of numerous mental health experts.  At trial counsel's request, psychiatrist Jakob Camp, M.D., evaluated Floyd on the day of his arrest, only hours after he committed the murders.  ECF No. 68-10, p. 1-3.  Counsel also consulted Frank E. Paul, Ph.D., a clinical psychologist, and David L. Schmidt, a clinical neuropsychologist, each of whom administered several tests on Floyd and prepared a lengthy and comprehensive evaluation.  *Id*., p. 16-75.  Trial counsel also retained neuropsychologist Thomas F. Kinsora, Ph.D., to evaluate (1) the psychological assessment

18

1    conducted by Floyd's treating neuropsychologist, Maria J.P. Cardle, Ph.D., when he was thirteen

2    years old,[7] and (2) the aforementioned assessment by Dr. Schmidt.  ECF No. 69, p. 3-15.

3         At Floyd's penalty hearing, trial counsel presented the testimony of Dr. Norton A. Roitman,

4    M.D., a psychiatrist who, along with Dr. Cardle and a neourologist identified as Dr. Kean, was

5    involved in Floyd's treatment when Floyd was a teenager.  ECF No. 113-1, p. 4-35.  Lastly, trial

6    counsel also presented the testimony of Edward J. Dougherty, Ed.D, a forensic psychologist retained

7    by the defense to evaluate Floyd.[8]  ECF No. 113-2, p. 4-147.

8         As noted by respondents, none of the foregoing mental health experts diagnosed Floyd as

9    suffering from organic brain damage caused by FASD.  Dr. Dougherty testified as to the likelihood

10   that Floyd's developmental problems were caused, at least in part, by the emotional distress his

11   mother endured while pregnant with him, as well as her use of alcohol, drugs, and tobacco during

12   that time.  He also discussed the trauma resulting from the circumstances surrounding Floyd's

13   premature birth and other adverse physical and environmental factors that likely impacted his early

14   development.

15        While Floyd claims that post-conviction counsel was ineffective for not developing FASD

16   evidence, the only evidence he cites to support the allegation that Floyd has organic brain damage

17   from FASD is a 2006 report from a psychologist, Natalie Novick Brown, Ph.D.  ECF No. 69-4, p.

18   55-77.  Based on her report, however, it does not appear that she personally evaluated Floyd, but

19   instead, arrived at her conclusions by reviewing documents and photographs.

20        In light of the foregoing, Floyd has not shown that post-conviction counsel's performance

21   was unreasonable or outside the bounds prevailing professional norms because counsel did not

22   develop FASD evidence to support a claim of ineffective assistance of trial counsel.

23        In Claim One(B), Floyd alleges that trial counsel were ineffective during the voir dire stage

24   of his trial.  He faults trial counsel for agreeing to not voir dire jurors who had reservations about the

25

26        [7]    Dr. Cardle's assessment is located at ECF No. 69-5, p. 69-75.

          [8]    Dr. Dougherty's report is located at ECF No. 69, p. 42-66.

1   death penalty, agreeing to a prejudicial voir dire format, and failing to individually question each

2   potential juror.  He also claims that counsel were ineffective in failing to "life qualify" the jury,

3   excuse certain jurors, and intelligently exercise peremptory challenges.  In addition, he contends that

4   trial counsel were ineffective in failing to object to the State's use of peremptory strikes against

5   women.

6          With regard to the last claim, Floyd alleges little more than the fact that the State used three

7   of its five peremptory challenges against women.  As such, he fails to establish even a prima facie

8   case of gender discrimination.  *See Johnson v. California*, 545 U.S. 162, 168 (2005) (quoting *Batson*

9   *v. Kentucky*, 476 U.S. 79 (1986), in holding that a prima facie case of discrimination requires a

10  "showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose").

11         The remaining allegations relating to counsel's voir dire performance are similarly without

12  merit. The other side of the agreement regarding death scrupled jurors was that the State agreed to

13  excuse several potential jurors who indicated a bias in favor of imposing the death penalty.  ECF No.

14  111-1, p. 5.  In addition, the voir dire format utilized by the district court was not an abuse of the

15  court's discretion.  *See Summers v. State*, 718 P.2d 676, 679 (Nev. 1986).

16         As for trial counsel's alleged failure to individually question some of the potential jurors,

17  "life qualify" the jury, excuse certain jurors, and intelligently exercise peremptory challenges, Floyd

18  has not shown that such acts or omission resulted a juror with actual or implied bias.  In sum, Floyd

19  cannot show a reasonable probability that the outcome of his trial was impacted by any of the alleged

20  deficiencies in trial counsel's performance that are identified in Claim One(B).  *See Fields v. Brown*,

21  503 F.3d 755, 776 (9th Cir.2007) (en banc) (finding no reasonable probability of a different outcome

22  where petitioner failed to show that juror was actually or impliedly biased).  Accordingly, post-

23  conviction counsel was not ineffective in raising these ineffective assistance claims in Floyd's initial

24  post-conviction proceeding.

25         As noted above, Claim One(D) alleges ineffective assistance based on trial counsel's failure

26  to make certain objections during trial.  The aspects of this claim that are procedurally defaulted are

1   allegations that trial counsel was ineffective in failing to object to (1) the prosecution's failure to

2   preserve the blood sample taken from Floyd on the day he was arrested, and (2) jury instructions

3   regarding premeditation and death penalty eligibility.

4         With regard to the blood sample, Floyd claims that independent testing by the defense could

5   have been used to undermine testimony from the State's expert as to Floyd's blood alcohol content at

6   the time of the crime and the absence of methamphetamine in his system.  Under *California v.*

7   *Trombetta*, 467 U.S. 479 (1984), the State has a constitutional duty to preserve evidence, but the

8   duty is limited to evidence whose exculpatory value was apparent before its destruction, and is of

9   such nature that the defendant cannot obtain comparable evidence from other reasonably available

10   means.  *Trombetta*, 467 U.S. at 489.  Destruction of *potentially* exculpatory evidence does not

11   violate the Constitution unless the evidence was destroyed in bad faith.  *Arizona v. Youngblood*, 488

12   U.S. 51, 58 (1988).

13         Here, Floyd has shown only that the evidence was, at best, potentially exculpatory.  And,

14   because he has made no showing that the State acted in bad faith in allegedly failing to preserve the

15   blood sample, it is unlikely that counsel's failure to raise the issue at trial would have resulted in a

16   more favorable outcome.  *See Cunningham v. City of Wenatchee*, 345 F.3d 802, 812 (9th Cir. 2003)

17   (rejecting *Trombetta* claim where value of evidence and showing of bad faith were speculative).

18   Thus, post-conviction counsel was not ineffective by not raising the issue in the initial post-

19   conviction proceeding.

20         Similarly, neither of the jury instruction issues would have been meritorious either.  There is

21   no plausible argument that the jury would not have found the element of premeditation absent the

22   supposedly defective instruction.  And, the Nevada Supreme Court has soundly rejected the claim

23   Floyd makes with respect to the death eligibility instruction.  *See Nunnery v. State*,  263 P.3d 235,

24   250-53 (Nev. 2011)

25         For the foregoing reasons, Floyd has not shown that the procedural default of any of his

26   ineffective assistance of trial counsel claims should be excused pursuant to the holding in *Martinez*.

As for his request to develop the factual record, Floyd contends that doing so would allow him to show that his initial post-conviction counsel was ineffective and would also allow him to demonstrate the extent of the prejudice brought about by trial counsel's ineffectiveness.  He does not specify, however, what type of evidence he intends to develop beyond that which already contained in the record herein.  Accordingly the court does not see the benefit of additional factual development in relation to Floyd's *Martinez* arguments.

     **IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 77) is GRANTED in part and DENIED in part.  For the reasons set forth above, the following claims in petitioner's second amended petition (ECF Nos. 66/95) are DISMISSED:  Claims One(A-C, part of D, E-G), Two, Three, Four (except for (B)(1) and (5)), Six, Eight, Eleven, Twelve, Fourteen, Fifteen, and Seventeen (A, in part, and B).

     **IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the date on which this order is entered within which to file their answer to petitioner's remaining claims. In all other respects, the scheduling of this matter is governed by the order entered on March 22, 2011 (ECF No. 61).

     **IT IS FURTHER ORDERED** that respondents' motion to extend time (ECF No. 109) is GRANTED *nunc pro tunc* as of July 5, 2012.

     DATED:   August 20, 2012.


_____
UNITED STATES DISTRICT JUDGE

22