RENE L. VALLADARES
Federal Public Defender
Nevada Bar No. 11479
DAVID ANTHONY
Assistant Federal Public Defender
Nevada Bar No. 007978
david_anthony@fd.org
BRAD D. LEVENSON
Assistant Federal Public Defender
California Bar No. 166073
brad_levenson@fd.org
ELLESSE HENDERSON
Assistant Federal Public Defender
California Bar No. 302838
ellesse_henderson@fd.org
411 E. Bonneville, Ste. 250
Las Vegas, Nevada 89101
(702) 388-6577
(702) 388-5819 (fax)

Attorneys for Petitioner

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ZANE M. FLOYD,<br><br>        Petitioner,<br><br>v.<br><br>WILLIAM GITTERE,[1] et al.,<br><br>        Respondents. | Case No. 2:06-cv-00471<br><br>**MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>(DEATH PENALTY CASE)<br><br>(Execution Warrant Sought for the Week of June 7, 2021) |

---

[1] Warden William Gittere is automatically substituted for former warden Timothy Filson pursuant to Fed. R. Civ. P. 25(d).

# MEMORANDUM OF POINTS AND AUTHORITIES

Petitioner Zane Floyd argued in his Second Amended Petition that execution by lethal injection is unconstitutional under the Eighth and Fourteenth Amendments.[2] But the Ninth Circuit previously refused to consider this claim, concluding that it was not yet ripe. *Floyd v. Filson*, 949 F.3d 1128, 1152 (9th Cir. 2020), *cert. denied sub nom. Floyd v. Gittere*, No. 19-8921, 2020 WL 6385791 (U.S. Nov. 2, 2020). The State has since signaled it intends to carry out Floyd's execution.[3] Not only is Floyd's claim now ripe, the State's notice constitutes an extraordinary circumstance justifying relief under Rule 60(b)(6)—this motion represents Floyd's only chance before his unconstitutional execution to have his claim heard on the merits in his habeas proceedings.[4]

## I. BACKGROUND

Floyd has tried unsuccessfully for fourteen years to have a court consider the merits of his claim challenging the constitutionality of Nevada's lethal injection procedure. He first raised the claim in his 2006 amended petition in this Court.[5] He

---

[2] ECF No. 66 at 205–23.
[3] Ex. 1.
[4] Floyd will also be challenging Nevada's execution protocol under 42 U.S.C. § 1983. Although related to his habeas claim, the two cases are distinct. *See Nance v. Comm'r, Georgia Dep't of Corr.*, No. 20-11393, 2020 WL 7053495 (11th Cir. Dec. 2, 2020). Supreme Court caselaw requires Floyd in his § 1983 proceedings to propose alternatives to Nevada's unconstitutional execution protocol. *See Baze v. Rees*, 553 U.S. 35, 52 (2008). But there is no alternative provided in Nevada law that protects Floyd from cruel and unusual pain; thus, the Nevada execution scheme is unconstitutional, and this claim is appropriate for habeas relief. *See Hill v. McDonough*, 547 U.S. 573, 579–80 (2006).
[5] ECF No. 18 at 183–95.

then returned to state court and raised the claim there,[6] but it was rejected on procedural grounds.[7] As a matter of state law, claims challenging a method of execution are not cognizable in state habeas proceedings, so Floyd was deprived of a state forum in which to raise his claims. *McConnell v. State*, 212 P.3d 307, 309–11 (Nev. 2009), *as corrected* (July 24, 2009). Floyd then raised the claim anew in his second amended petition in this Court,[8] but this Court rejected the claim as procedurally defaulted[9] and denied a certificate of appealability.[10] Finally, the Ninth Circuit rejected the claim as unripe. *Floyd*, 949 F.3d at 1152. Thus, no court has yet heard this claim on the merits.

The Ninth Circuit's ripeness determination rested on litigation that had occurred in Nevada the previous year, *State v. Alvogen, Inc.*, Nos. 77100, 77365 (Nev. 2019). *See Floyd*, 949 F.3d at 1152. Alvogen, Inc., a pharmaceutical company that produces midazolam, sued in state court in 2018 to prevent the State from using its drug in an upcoming execution.[11] The State, Alvogen claimed, had improperly obtained the drug after Alvogen had refused to provide it, informing the State that it was not approved for use in an execution.[12] Alvogen premised that refusal in part on states' use of midazolam in several executions that the media had

---

[6] Ex. 2 (ECF No. 72-5–72-8).
[7] Ex. 3 (ECF No. 71-10).
[8] ECF No. 66 at 205–23.
[9] ECF No. 114 at 13.
[10] ECF No. 163 at 65.
[11] Ex. 4.
[12] *Id.* at 2–3.

classified as "botched."[13] The state court granted Alvogen a temporary restraining order and then a preliminary injunction, preventing the State from using midazolam in an execution.[14] The State appealed, but the Nevada Supreme Court eventually dismissed the appeal and vacated the preliminary injunction as moot, since the sole candidate for execution had committed suicide and the execution drugs at issue were set to expire. *State v. Alvogen, Inc.*, 450 P.3d 390, 2019 WL 5390459 (Nev. 2019) (unpublished table disposition).

Despite the outcome of the Alvogen litigation, the State on March 26, 2021, signaled its intent to proceed with Floyd's execution, reporting to the media that it would soon be seeking a warrant of execution.[15] This action by the State renders the Alvogen litigation irrelevant and Floyd's claim finally ripe—the injury is "no longer speculative" and instead is now certain to occur. *Floyd*, 949 F.3d at 1152 (quoting *Portman v. County of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)).

## II.   ARGUMENT

Federal Rule of Civil Procedure 60(b) allows district courts to relieve litigants from final judgments. The rule lists five specific grounds for relief and a "catchall" provision, Rule 60(b)(6). This catchall provision allows relief from a judgment or order if a party demonstrates "extraordinary circumstances which prevented or

---

[13] *Id.* at 3.
[14] Exs. 5, 6.
[15] David Ferrara, *DA to proceed with death penalty against gunman in 1999 store killings*, Las Vegas Review Journal, https://www.reviewjournal.com/crime/courts/da-to-proceed-with-death-penalty-against-gunman-in-1999-store-killings-2315637/; *see* Ex. 1.

rendered him unable to prosecute [his case]." *Lal v. California*, 610 F.3d 518, 524 (9th Cir. 2010) (alteration in original) (quoting *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 24, 2002)); *see Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017).

### A.   Factors weigh in favor of allowing relief under Rule 60(b)(6)

Determining whether to provide relief from a judgment or order under Rule 60(b)(6) requires a fact-specific inquiry. *See Buck*, 137 S. Ct. at 778; *Hall v. Haws*, 861 F.3d 977, 987 (9th Cir. 2017). Courts consider six factors: (1) the existence of extraordinary circumstances; (2) the petitioner's diligence; (3) finality interests; (4) delay between the judgment and the Rule 60(b)(6) motion; (5) the connection between the extraordinary circumstances and the underlying decision; and (6) comity. *Hall*, 861 F.3d at 987; *see Phelps v. Alameida*, 569 F.3d 1120, 1135–40 (9th Cir. 2009). These factors weigh in favor of relieving Floyd from this Court's judgment.

### 1.   Extraordinary circumstances justify relief from judgment.

Floyd's case presents an extraordinary circumstance: Should this Court deny Floyd's motion, he will face execution with no court ever hearing his challenge in his habeas proceedings to that execution's constitutionality. And there is good reason to doubt its constitutionality—the only court to ever consider Nevada's novel execution protocol concluded it presented a "substantial risk of serious harm" and "an objectively intolerable risk of harm," rendering it unconstitutional under the Eighth

Amendment.[16] The merits of Floyd's claim, combined with his previous inability to present those merits in his habeas proceedings, result in precisely the type of "extraordinary circumstance" justifying relief under Rule 60(b)(6). *See Hall*, 861 F.3d at 987–88 (emphasizing that federal court had not yet considered petitioner's claim on the merits); *see also Buck*, 137 S. Ct. at 778–79 (concluding that district court had improperly denied relief under Rule 60(b)(6) when petitioner had raised a claim of injury to not just himself but "the law as an institution, the community at large, and the democratic ideal reflected in the processes of our courts" (internal quotation marks, citation, and ellipses omitted)); *Ybarra v. Filson*, 869 F.3d 1016, 1023–27 (9th Cir. 2017) (reasoning that relief was appropriate under Rule 60(b)(6) when petitioner's claim of intellectual disability was not futile).

        a.    **Midazolam, the first drug in Nevada's protocol, does not function as needed, causes pain and suffering, and has been linked to numerous botched executions.**

The intended purpose of midazolam, the first drug in Nevada's three-drug protocol, is to anesthetize, rendering the inmate unconscious and insensate to pain and suffering throughout the execution procedure. Midazolam, however, is physically and pharmacologically incapable of inducing general anesthesia, regardless of how large the dose of the drug administered. Unlike barbiturate anesthetic drugs used in most execution protocols,[17] midazolam is a central nervous

---

[16] Ex. 7. Media reports suggest the Nevada Department of Corrections does not currently possess the three drugs required under its June 11, 2018 execution protocol for carrying out Floyd's execution. If the State has adopted or plans to adopt a new execution protocol, it has yet to inform Floyd of the most basic information regarding its intentions.

[17] *See Baze v. Rees*, 553 U.S. 35, 42–44 (2008).

system depressant.[18] It is capable of inducing sedation and amnesia, but it cannot protect against sensations of pain.[19] (Studies have shown that midazolam can actually increase the perception of pain.[20]) As a result, midazolam is typically administered prior to the administration of an anesthetic.[21] In other words, an individual can still consciously experience his or her surroundings and feel severe pain while under sedation using midazolam.[22]

In addition, midazolam has an acidic low pH, significantly lower than normal blood pH.[23] As a result of that low pH level, injection of a large dose of midazolam, including the 500 milligram dose provided in the execution protocol, causes "flash" or noncardiogenic pulmonary edema in the vast majority of executions carried out with the drug. *See, e.g.*, *In re Ohio Execution Protocol Litigation,* No. 2:11-cv-1016, 2019 WL 244488 at *63 (S.D. Ohio Jan. 14, 2019).[24] Pulmonary edema produces excruciating feelings and sensations similar to drowning and asphyxiation as fluid occupies a greater volume of the air spaces in the lungs.[25]

These risks are not merely speculative. An ever-growing body of evidence from executions using midazolam demonstrates that the drug is unsuitable for use

---

[18] Ex. 8 at 5.
[19] Ex. 9 at 11, 13, 16; Ex. 8 at 10–11.
[20] Ex. 8 at 11.
[21] Ex. 8 at 9.
[22] Ex. 9 at 14; Ex. 8 at 9.
[23] Ex. 8 at 13; Ex. 9 at 12.
[24] *See also* NPR Investigations, *Gasping for Air: Autopsies Reveal Troubling Effects of Lethal Injection*, https://www.npr.org/2020/09/21/793177589/gasping-for-air-autopsies-reveal-troubling-effects-of-lethal-injection.
[25] Ex. 9 at 29.

in executions. For example, in April 2014 Oklahoma executed Clayton Lockett using midazolam for the first time as the initial drug.[26] After working for nearly an hour to establish intravenous access, the execution team injected midazolam, vecuronium bromide, and most, but not all, of the potassium chloride.[27] Lockett then regained consciousness, beginning to strain against the restraints, buck his head, and speak.[28] The Director of the Oklahoma Department of Corrections and the Governor of Oklahoma eventually called off the execution, but Lockett died a short time later.[29] President Obama described the execution as "deeply troubling."[30] Undeterred, Oklahoma used midazolam again in the execution of Charles Warner in January 2015.[31] After the executioners administered 500 milligrams of midazolam, witnesses heard Warner say his body was "on fire."[32]

Similarly, in Arizona, just a few months after Lockett's botched execution, Joseph Wood gasped on the execution table for nearly two hours before dying.[33] A

---

[26] Jeffrey E. Stern, *The Cruel and Unusual Execution of Clayton Lockett*, The Atlantic, https://www.theatlantic.com/magazine/archive/2015/06/execution-clayton-lockett/392069/.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] The Atlantic, *The Cruel and Unusual Execution of Clayton Lockett*; https://www.theatlantic.com/magazine/archive/2015/06/execution-clayton-lockett/392069/
[31] Andrew Buncombe, *Charles Warner execution: Oklahoma inmate's last words are 'my body is on fire' as state carries out first death penalty in nine months*, Independent, https://www.independent.co.uk/news/world/americas/charles-warner-execution-my-body-fire-9981842.html.
[32] *Id.*
[33] *See* Michael Kiefer, *Reporter describes Arizona execution: 2 hours, 640 gasps*, AZ Central, July 24, 2014. https://www.azcentral.com/story/news/arizona/politics/2014/07/24/arizona-execution-joseph-wood-eyewitness/13083637/.

media witness compared Wood's breathing to a "fish gulping for air," and a second reported counted Wood gasping more than 600 times.[34] Senator John McCain of Arizona described Wood's execution as tantamount to "torture."[35]

There are several other examples. In Arkansas in 2017, Kenneth Williams coughed and convulsed after the executioners administered the drugs.[36] At points during the execution, his breathing was so heavy that a media witness saw his back arch off the gurney.[37] In Ohio in 2017, Gary Otte's stomach rose and fell repeatedly after executioners injected midazolam.[38] Otte's attorney observed that his face was teary and his hands were clenched.[39] And in Tennessee in 2018, Billy Ray Irick moved during his execution, leading witnesses to believe the midazolam he was given did not render him fully unconscious and insensate to pain.[40]

These are just a handful of more recent cases; other examples abound. *See, e.g.*, Deborah W. Denno, *When Legislatures Delegate Death: The Troubling Paradox*

---

[34] *Id.*

[35] Ben Brumfield & Mariano Castillo, *McCain: Prolonged Execution Was Torture*, CNN, http://www.cnn.com/2014/07/25/justice/arizona-execution-controversy/.

[36] *See* Jacob Rosenberg, *Arkansas Executions: I Was Watching Him Breathe Heavily and Arch His Back*, The Guardian, https://www.theguardian.com/us-news/2017/apr/25/arkansas-execution-eyewitness-marcel-williams.

[37] *Id.*

[38] *Rising and falling of Ohio inmate's stomach was not enough to stop his execution, judge explains*, NY Daily News, https://www.nydailynews.com/news/crime/inmate-drug-reaction-not-stop-execution-judge-article-1.3508904.

[39] *Id.*

[40] Dave Boucher & Adam Tamburin, *Tennessee execution: Billy Ray Irick tortured to death, expert says in new filing*, The Tennessean, https://www.tennessean.com/story/news/crime/2018/09/07/tennessee-execution-billy-ray-irick-tortured-filing/1210957002/.

*Behind State Uses of Electrocution and Lethal Injection and What it Says About Us*, 63 Ohio St. L.J. 63, 139 (2002); Deborah W. Denno, *Getting to Death: Are Executions Unconstitutional?*, 82 Iowa L. Rev. 319, 428–29 (1997).

These are just a handful of more recent cases; other examples abound. *See, e.g.*, Deborah W. Denno, *When Legislatures Delegate Death: The Troubling Paradox Behind State Uses of Electrocution and Lethal Injection and What it Says About Us*, 63 Ohio St. L.J. 63, 139 (2002); Deborah W. Denno, *Getting to Death: Are Executions Unconstitutional?*, 82 Iowa L. Rev. 319, 428–29 (1997). Due to these significant problems associated with midazolam, at least three states, Kentucky,[41] Florida,[42] and Arizona[43] have ceased using the drug in executions.

### b. Fentanyl, the second drug, cannot be relied on to induce unawareness.

Nevada's use of fentanyl, an opioid, as the second drug in its lethal injection procedure contributes to the substantial risk of harm presented by Nevada's experimental protocol. Importantly, because Nevada's first drug, midazolam, is inadequate for the intended purpose, it is imperative that the second drug reliably induce the requisite depth of anesthesia to render Floyd completely unconscious,

---

[41] *Kentucky drops 2-drug executions, reworking method*, Daily Mail, http://www.dailymail.co.uk/wires/ap/article-2834665/Kentucky-drops-2-drug-executions-reworking-method.html.

[42] Death Penalty Information Center, *Overview of Lethal Injection Protocols*, https://deathpenaltyinfo.org/executions/lethal-injection/overview-of-lethal-injection-protocols.

[43] *See Wood v. Ryan*, No. 2:14-cv-1447, ECF No. 145 at 2 (D. Ariz. Oct. 17, 2016) (brief explaining that Arizona "has committed to removing midazolam as an option from [Arizona's execution protocol] and now unequivocally commits not to use midazolam again, even if it becomes available").

unaware, and insensate to pain. Fentanyl, however, is demonstrated to be unreliable, even in high doses, for inducing unawareness.[44] Its experimental use in Nevada's protocol creates an undue and substantial risk that Floyd will be aware, will experience "air hunger," and will suffer a horrific death when the third drug, cisatracurium, is introduced into his body.

### c. Cisatracurium, the third drug, is a paralytic that could cause Floyd to be paralyzed and awake while dying of suffocation.

Finally, Nevada's protocol is unique in that it proposes the first ever use of a paralytic agent as the final drug administered, *i.e.*, the killing agent. Expert evidence establishes that cisatracurium presents a wholly unnecessary, substantial risk of serious harm. If Floyd has not achieved the requisite depth of anesthesia, the cisatracurium, which freezes the body's muscles including the diaphragm, will cause him to suffer a torturous death by suffocation.[45] And, if he has achieved the requisite depth of anesthesia, Floyd would have already stopped breathing by the time the cisatracurium was administered, making the drug wholly unnecessary in the protocol.[46] Indeed, the only court to address the lawfulness of Nevada's proposed use of cisatracurium as the third and final drug in conducting an execution found it

---

[44] *See, e.g.*, Jonathan B. Mark & Leslie M. Greenberg, *Intraoperative Awareness and Hypertensive Crisis during High-Dose Fentanyl-Diazepam-Oxygen Anesthesia*, 62 Anesth Analg. 698–700 (1983); Nagaprasadarao Mummanemi, M.D., *Awareness and Recall with High-Dose Fentanyl-Oxygen Anesthesia*, 59 Anesth Analg, 948–49 (1980).

[45] Ex. 10 at 26.

[46] *Id.* at 25.

presented a "substantial risk of serious harm" and "an objectively intolerable risk of harm," rendering it unconstitutional under the Eighth Amendment.[47]

### 2. Floyd has been diligent in pursuing this claim.

Floyd has raised this claim at every opportunity in federal court. He included the claim in his first counseled federal petition. Then, after returning from state court, he raised the claim again in his second amended petition. And, despite this Court's denial of a certificate of appealability, Floyd raised the claim in the Ninth Circuit Court of Appeals. Floyd now raises the claim in a motion under Rule 60(b)(6), as soon as possible after the State gave notice it intends to move forward with Floyd's execution—i.e., after the ripeness impediment was removed. *See Butz v. Mendoza-Powers*, 474 F.3d 1193, 1195–96 (9th Cir. 2007) (ordering district court to consider Rule 60(b)(6) motion despite six-year delay between judgment and motion because movant "allege[d] explanations for the delay that may satisfy his burden of showing he was sufficiently diligent in pursuing his case"); *see also* Fed. R. Civ. P. 60(c)(1) (requiring movant under Rule 60(b)(6) to file motion "within a reasonable time").

### 3. Neither finality interests nor comity considerations should bar relief under Rule 60(b)(6).

The next factors relevant here are finality interests and comity. *Hall*, 861 F.3d at 987. This Court's judgment denying Floyd relief is final. So, too, by definition, are all judgments challenged under Rule 60(b). "If simple finality were sufficient to overcome a Rule 60(b)(6) motion then no such motions would ever be

---

[47] Ex. 7.

granted." *Ritter v. Smith*, 811 F.2d 1398, 1402 (11th Cir. 1987). That is especially the case here, where finality interests must be weighed against Floyd's interest in having a newly ripe claim heard on the merits; were this Court to deny relief to Floyd based on finality interests, no other habeas petitioners would ever have the opportunity to challenge lethal injection as unconstitutional. *See Panetti v. Quarterman*, 551 U.S. 930, 945–47 (2007) (explaining that finality interests are not implicated when a habeas petitioner raises a previously unripe claim after the conclusion of initial federal habeas proceedings). On the other side of the scale, the State's interests in finality are not implicated as Floyd's claim would not require the State to conduct a new trial or sentencing hearing. Instead, this Court's consideration would solely be focused on the constitutionality of Nevada's execution protocol before it is used for the first time.

Similarly, comity is a consideration in every case involving § 2254. "However, in the context of Rule 60(b)(6), [courts] need not be concerned about upsetting the comity principle when a petitioner seeks reconsideration not of a judgment on the *merits* of his habeas petition, but rather of an *erroneous* judgment that prevented the court from ever *reaching* the merits of that petition." *Phelps*, 569 F.3d at 1139. In other words, comity considerations play little role when denial of relief under Rule 60(b)(6) would prevent a federal court from ever considering the merits of a claim. *See id.* at 1139–40; *Ruiz v. Quarterman*, 504 F.3d 523, 532 (5th Cir. 2007).

In addition, comity should not prevent this Court's consideration of the claim because the Nevada Supreme Court provides no avenue for relief. In 2009, the

Nevada Supreme Court decided for the first time that a challenge to lethal injection in the state "does not implicate the validity of the death sentence and therefore falls outside the scope of a post-conviction petition for a writ of habeas corpus." *McConnell*, 212 P.3d at 311. The Nevada Supreme Court has since repeatedly reaffirmed this conclusion. *See, e.g., Witter v. State*, 281 P.3d 1232, 2009 WL 3571288, at *3 n.5 (Nev. 2009) (unpublished table disposition); *Blake v. McDaniel*, 130 Nev. 1154, 2014 WL 3784125, at *10 (2014) (unpublished table disposition). Because this claim is not cognizable in state court, comity considerations are irrelevant. *Cf.* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing exhaustion when "circumstances exist that render such process ineffective to protect the rights of the applicant"); *see also Snow v. McDaniel*, No. 2:03-cv-00292-MMD-CWH, ECF No. 173 at *53–54 (D. Nev. Sept. 12, 2013) (concluding challenge to lethal injection was not procedurally barred because Nevada provides no state forum for litigating the claim).

### 4. The extraordinary circumstance present here is connected to the initial denial of Floyd's claim.

The last factor relevant to Floyd's motion is the "degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought." *Hall*, 861 F.3d at 987; *see Mitchell v. United States*, 958 F.3d 775, 786 (9th Cir. 2020), *cert. denied*, 207 L. Ed. 2d 1161 (Aug. 25, 2020) ("Said otherwise, we consider whether the alleged extraordinary circumstance, such as a change in the law, was material to the prisoner's claim."). Here, the extraordinary circumstance—the new ripeness of a previously unconsidered claim—is exactly the

reason the claim was previously rejected in the Ninth Circuit. Because this changed circumstance bears directly on the reason for the claim's previous rejection, this factor weighs in favor of granting Floyd's motion. *Cf. Phelps*, 569 F.3d at 1139.

### B. This motion is not a second or successive petition for writ of habeas corpus.

A petition "is second or successive only if it raises claims that were or could have been adjudicated on the merits." *McNabb v. Yates*, 576 F.3d 1028, 1028 (9th Cir. 2009). Because this Court rejected Floyd lethal-injection claim based on procedural default,[48] it did not adjudicate the claim on the merits. *See Gonzalez v. Crosby*, 545 U.S. 524, 532 n.4 (2005) (explaining that ruling is not "on the merits" if court denies petition for "failure to exhaust, procedural default, or statute-of-limitations bar"); *Pizzuto v. Ramirez*, 783 F.3d 1171, 1176 (9th Cir. 2015); *Cook v. Ryan*, 688 F.3d 598, 608 (9th Cir. 2012). Nor did the Ninth Circuit decide this claim on the merits, instead deciding it solely on ripeness grounds. *Floyd*, 949 F.3d at 1152. Just as with procedural default, ripeness decisions do not render future iterations of the claim—when ripe—"second or successive." *See Panetti*, 551 U.S. at 945 ("Congress did not intend the provisions of AEDPA addressing 'second or successive' petitions to govern a filing in the unusual posture presented here: a § 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe.").

///

///

---

[48] ECF No. 114 at 13.

## III. CONCLUSION

Because Floyd has shown extraordinary circumstances justifying relief under Rule 60(b)(6), he requests that this Court relieve him from its previous judgment and allow litigation on his claim that execution by lethal injection violates his constitutional rights.

DATED this 15th day of April, 2021.

Respectfully submitted
RENE L. VALLADARES
Federal Public Defender

*/s/ David Anthony*
DAVID ANTHONY
Assistant Federal Public Defender

*/s/ Brad D. Levenson*
BRAD D. LEVENSON
Assistant Federal Public Defender

*/s/ Ellesse Henderson*
ELLESSE HENDERSON
Assistant Federal Public Defender

## CERTIFICATE OF SERVICE

In accordance with the Rules of Civil Procedure, the undersigned hereby certifies that on this 15th day of April, 2021, a true and correct copy of the foregoing MOTION FOR RELIEF FROM JUDGMENT PURSUANT TO RULE 60(B) OF THE FEDERAL RULES OF CIVIL PROCEDURE, was filed electronically with the United States District Court. Electronic service of the foregoing document shall be made in accordance with the master service list as follows:

Jeffrey M. Conner
Office of Nevada Attorney General
Assistant Solicitor General
jconner@ag.nv.gov

*/s/ Sara Jelinek*
An Employee of the Federal Public Defenders Office, District of Nevada